UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS RODRIGUEZ, individually, and on behalf of members of the public similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>USF REDDAWAY, INC., an unknown business entity; YRC WORLDWIDE, INC., an unknown business entity; and DOES 1 through 100, inclusive,<br><br>Defendants. | No. 2:21-cv-02270-TLN-DB<br><br><br>**ORDER** |

This matter is before the Court on Plaintiff Carlos Rodriguez's ("Plaintiff") Motion to Remand. (ECF No. 8.) Defendant USF Reddaway, Inc. ("Defendant") filed an opposition. (ECF No. 12.) Plaintiff filed a reply. (ECF No. 15.) Also pending before the Court is Defendant's Motion to Strike. (ECF No. 16.) For the reasons set forth below, the Court DENIES Plaintiff's Motion to Remand and Defendant's Motion to Strike.

///
///
///
///

1

### I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

On August 15, 2021, Plaintiff filed his Class Action Complaint with the San Joaquin County Superior Court. (ECF No. 1-1 at 2.) Plaintiff alleges he was an hourly-paid, non-exempt employee for Defendant[2] from approximately August 2020 to May 2021. (*Id.* at 8.) Plaintiff alleges Defendant engaged in a pattern and practice of wage abuse against hourly-paid or non-exempt employees. (*Id.*) Plaintiff alleges Defendant failed to pay these employees for all regular and/or overtime wages earned and for missed meal periods and rest breaks. (*Id.*) Plaintiff further alleges employees were not paid all minimum wages, were not paid all wages owed upon termination, and were not timely paid under California Labor Code § 204. (*Id.* at 9–10.) Plaintiff also claims employees did not receive complete and accurate wage statements. (*Id.* at 10.) Finally, Plaintiff alleges Defendant did not reimburse employees for all necessary business expenses and did not keep complete and accurate payroll records. (*Id.*)

Plaintiff claims his share of the amount in controversy is less than $75,000. (*Id.* at 3.) However, Plaintiff brought this action "on his own behalf and on behalf of all other members of the general public similarly situated." (*Id.* at 5.) Plaintiff proposes a class constituting "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California." (*Id.*) Plaintiff also proposes a subclass. (*Id.*)

On December 9, 2021, Defendant removed the case to this Court. (ECF No. 1.) Defendant bases removal on the Class Action Fairness Act of 2005 ("CAFA") and claims: (1)

---

[1] Defendant Yellow Corporation states it was erroneously sued as Defendant YRC Worldwide, Inc. (ECF No. 9 at 1.) Defendants USF Reddaway, Inc. and Yellow Corporation filed a motion to compel arbitration and dismiss or stay the instant action on April 14, 2022. (ECF No. 20.) The Court will address Defendants' motion in a separate order.

[2] Plaintiff's Complaint names both USF Reddaway, Inc. and YRC Worldwide, Inc. as defendants. (ECF No. 1-1 at 2.) However, only Defendant USF Reddaway, Inc. filed an opposition to Plaintiff's motion to remand. (ECF No. 12.) Therefore, for the purposes of the instant motion to remand, the Court discusses Plaintiff's allegations in the Complaint only with regard to Defendant USF Reddaway, Inc.

minimal diversity exists; and (2) the amount in controversy exceeds $5,000,000. (*Id.* at 2.) Defendant also claims removal is appropriate under federal question jurisdiction. (*Id.*)

On January 10, 2022, Plaintiff filed the instant motion to remand. (ECF No. 8.) On February 10, 2022, Defendant filed the opposition. (ECF No. 12.) On February 17, 2022, Plaintiff filed the reply. (ECF No. 15.) On February 23, 2022, Defendant filed the instant motion to strike. (ECF No. 16.)

## II.    STANDARD OF LAW

A civil action brought in state court, over which the district court has original jurisdiction, may be removed by the defendant to federal court in the judicial district and division in which the state court action is pending. 28 U.S.C. § 1441(a). CAFA gives federal courts original jurisdiction over certain class actions only if: (1) the class has more than 100 members; (2) any member of the class is diverse from the defendant; and (3) the aggregated amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2), (5)(B).

Congress enacted CAFA "specifically to permit a defendant to remove certain class or mass actions into federal court" and intended courts to interpret CAFA "expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). As a general rule, removal statutes are to be strictly construed against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). However, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). Nonetheless, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

A defendant seeking removal under CAFA must file in the federal forum a notice of removal "containing a short and plain statement of the grounds for removal." *Dart Cherokee*, 574 U.S. at 83 (quoting 28 U.S.C. § 1446(a)). The notice of removal "need not contain evidentiary submissions," but rather a defendant's "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" suffices. *Id.* at 84, 89. When "a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been

3

satisfied." *Id.* at 88. "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

"[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable ones." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015). "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. Then "the district court must make findings of jurisdictional fact to which the preponderance standard applies." *Dart Cherokee*, 574 U.S. at 89 (internal citation omitted).

### III. ANALYSIS

The Court will first address Plaintiff's motion to remand and then Defendant's motion to strike.

#### A. Motion to Remand

Plaintiff argues removal is unwarranted because the amount in controversy does not exceed $5,000,000.[3] (ECF No. 8 at 8.) Plaintiff further argues Defendant "plucks numbers out of thin air to arrive at the amount in controversy," and relies on "speculative, self-serving assumptions." (*Id.* at 8, 13.) Plaintiff asserts Defendant's notice of removal provides no evidence supporting Defendant's statements regarding: (1) the number of non-exempt employees; (2) the number of full-time employees; (3) the number of workweeks or workdays worked by non-exempt employees; (4) the number of putative class members whose employment ended during the putative class period; (5) the number of wage statements; and (6) the average rate of pay for non-exempt employees. (*Id.* at 13.) Plaintiff also asserts Defendant's meal and rest period

---

[3] Plaintiff also argues there is no basis for federal question jurisdiction. (ECF No. 8 at 19.) Because the Court ultimately denies Plaintiff's motion to remand on a finding of diversity jurisdiction under CAFA, the Court does not address Plaintiff's arguments regarding federal question jurisdiction.

4

premium calculations in the notice of removal are speculation.[4] (*Id.* at 15.)

In the notice of removal, Defendant alleges the amount of controversy is at a minimum $21,256,474.28. (ECF No. 1 at 13.) In the opposition, Defendant argues the amount in controversy exceeds $24,040,629.44.[5] (ECF No. 12 at 18.) Defendant claims the later amount is reached by solely examining Plaintiff's first six claims, and therefore the actual amount in controversy is even greater after considering Plaintiff's additional four claims as well as potential attorneys' fees. (*Id.*) Specifically, Defendant reaches $24,040,629.44 by calculating potential damages for Plaintiff's claims for: (1) overtime wages; (2) meal periods; (3) rest periods; (4) minimum wages; (5) waiting time penalties; and (6) untimely wages under California Labor Code § 204. (*Id.* at 12–18.)

The Court will address the parties' arguments, but only regarding Defendant's data and Plaintiff's meal and rest period claims to determine if the amount in controversy exceeds the jurisdictional threshold.

### i. *Underlying Data*

To make its calculations for the six claims listed above, Defendant argues: (1) it employed approximately 2,624 non-exempt employees in California from August 16, 2017 onward; (2) Plaintiff worked an average of 8.3 hours a day, and thus, Plaintiff worked 1.5 hours of overtime per week; (3) the relevant non-exempt employees worked on average 78 workweeks during the putative class period, or 394 workdays; (4) the non-exempt employees' average hourly rate of pay during the putative class period was $20.51; (5) the minimum wage during the putative class

---

[4] Plaintiff makes additional arguments concerning Plaintiff's other claims in the Complaint and Defendant's calculation of attorneys' fees in the notice of removal. (ECF No. 8 at 17–19.) Plaintiff renews these arguments in the reply. (ECF No. 15 at 10.) The Court need not consider Plaintiff's additional arguments because the Court determines the amount in controversy exceeds the necessary threshold based solely upon Plaintiff's meal period and rest period claims. *See supra* sections III.A.ii, III.A.iii.

[5] Defendant also argues Plaintiff has waived contesting the amount in controversy because Plaintiff did not produce evidence or argument to explain what Plaintiff contests in Defendant's amount in controversy. (ECF No. 12 at 9.) Plaintiff responds to this argument in his reply. (ECF No. 15 at 6.) The Court does not address Defendant's waiver argument, or Plaintiff's response, because the Court determines the amount in controversy exceeds the requisite threshold without considering this argument. *See supra* sections III.A.ii, III.A.iii.

1    period was $12.31; (6) 1,013 non-exempt employees were terminated during the relevant period;
2    and (7) the average rate of pay of the terminated employees was $20.08.[6]  (ECF No. 12 at 12–18.)
3         Defendant supports these assertions via Jared Smith's declaration (the "Smith
4    Declaration"), as he oversees Defendant's human resource functions.  (ECF No. 12-1 at 2.)  Smith
5    states queries were ran through Defendant's human resources and electronic payroll systems to
6    obtain the data contained in his declaration.  (*Id.* at 3.)  Smith declares Defendant and human
7    resources personnel, including Smith, ordinarily rely upon these systems and queries during the
8    course of business to obtain reliable employee information.  (*Id.*)  For the 394 workdays per
9    employee, Smith claims this is a conservative estimate.  (*Id.*)  Smith explains each employee
10   worked an average of 1.97 years during the relevant period, but not every employee worked the
11   same number of days per week.  (*Id.*)  He thus "conservatively estimated each employee worked
12   only 200 days a year (or the equivalent to 5 days a week for 10 months a year)."  (*Id.*)  In
13   conjunction, for the average pay, Smith took the "current" pay rate or the last pay rate for all
14   relevant employees and averaged the total.  (*Id.*)
15        In the reply, Plaintiff argues there are multiple shortcomings in Defendant's opposition
16   and the Smith Declaration.  (ECF No. 15.)  Plaintiff asserts Defendant failed to provide
17   competent evidence to refute Plaintiff's allegations, the Smith Declaration does not support
18   Defendant's assumptions, and Defendant's calculations are based upon unreasonable
19   assumptions.  (*Id.* at 5–9.)  Regarding the Smith Declaration, Plaintiff argues while Smith
20   included an average number of hours worked per day for Plaintiff, Smith did not include the same
21   for all putative class members.  (*Id.* at 9.)  Plaintiff further argues "Defendant has provided no
22   reasonable ground for assuming that all of its non-exempt employees worked shifts long enough
23   to trigger a missed meal period premium, or a missed rest break premium."  (*Id.*)
24   ///

---

[6]  The Court notes a discrepancy in Defendant's opposition.  Defendant states the average rate of pay for the terminated employees was $18.80 and $20.08.  (ECF No. 12 at 17.)  The Court does not resolve this discrepancy because the Court finds the amount in controversy exceeds the necessary threshold without examining any claims specifically concerning terminated employees.  *See supra* sections III.A.ii, III.A.iii.

As a preliminary matter, Defendant was not required to submit evidence with the notice of removal. *See Dart Cherokee*, 574 U.S. at 84, 89 (holding the notice of removal "need not contain evidentiary submissions" and a defendant's "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" is sufficient at that stage). To the extent Plaintiff challenges the Smith Declaration in his reply, courts have found this type of evidence to be sufficient for establishing the amount in controversy in similar cases. *See Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1186 (E.D. Cal. 2020) (finding a declaration from defendant's "Associate Director of the Operational Finance Department" based on "his personal knowledge of [d]efendant's business records" to be sufficient); *Andrade v. Beacon Sales Acquisition, Inc.*, No. CV 19-06963-CJC(RAOx), 2019 WL 4855997, at *4 (C.D. Cal. Oct. 1, 2019) (holding "a declaration from a knowledgeable employee based on her analysis of regularly kept and created business records" to be sufficient). In the instant case, the Smith Declaration establishes all relevant facts and data Defendant uses in the opposition. (ECF No. 12-1 at 3–4.)

Many of Plaintiff's allegations support Defendant's findings and assumptions. While the Smith Declaration does not include an average number of hours worked per day for all non-exempt employees, it provides an 8.3 hours per workday average for Plaintiff. (ECF No. 12-1 at 4.) Plaintiff's Complaint alleges "Plaintiffs claims are typical of all other class members." (ECF No. 1-1 at 5.) The Complaint further alleges "Plaintiff and the other class members worked over eight (8) hours in a day, and/or forty (40) hours in a week during their employment." (ECF No. 1-1 at 8.) Therefore, based on Plaintiff's allegations, it is a reasonable assumption Plaintiff and all putative class members worked enough hours per workday to be eligible for a meal period and rest period every workday.

Based on the content of the Smith Declaration — and in the absence of any evidence from Plaintiff to the contrary — the Court concludes it lays a sufficient evidentiary foundation to determine the amount in controversy.

*ii.  Meal Period Claim*

Defendant multiplies the number of putative class members (2,624) with the average meal period premium ($20.51) and the estimated days worked during the relevant period (394). (ECF

No. 12 at 14.) Defendant further assumes a violation rate of 25%. (*Id.*) This calculation yields $5,301,096.64 for the amount in controversy for this claim. (*Id.*) As described above, the underlying data is sufficiently reliable. However, Plaintiff also argues the violation rate used is too high as nothing in the Complaint suggests Defendant failed to provide at least one meal period for every employee every week.[7] (ECF No. 8 at 15.) In the opposition, Defendant argues the 25% violation rate can be reasonably assumed because of the Complaint's "pattern and practice" allegations. (ECF No. 12 at 12.)

A "[d]efendant is not 'required to comb through its records to identify and calculate the exact frequency of violations.'" *Andrade*, 2019 WL 4855997, at *4 (quoting *Lopez v. Aerotek, Inc.*, No. SACV 14-00803-(CJGx), 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015)). Courts have found "violation rates of 25% to 60% can be reasonably assumed as a matter of law based on 'pattern and practice' or 'policy and practice' allegation." *Avila*, 432 F. Supp. 3d at 1189 (finding a 40% violation rate reasonable based upon the "pattern and practice" allegation); *see also Sanchez v. Abbott Lab'y*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at *5 (E.D. Cal. June 30, 2021) (finding a 40% violation rate for a meal period claim and 20% violation rate for a rest period claim to be reasonable because of "pattern and practice" allegations); *Olson v. Becton, Dickinson & Co.*, No. 19CV865-MMA (BGS), 2019 WL 4673329, at *5 (S.D. Cal. Sept. 25, 2019) (finding a 25% violation rate to be appropriate for the plaintiff's meal and rest period claims based on the "pattern and practice" allegation); *Elizarraz v. United Rentals, Inc.*, No. 2:18-CV-09533-ODW (JC), 2019 WL 1553664, at *4 (C.D. Cal. Apr. 9, 2019) (finding a 50% violation rate for a meal period claim and 25% violation rate for a rest period claim to be reasonable because of "pattern and practice" allegations).

///

---

[7] Plaintiff further argues Defendant fails to support with documentary evidence the data used to calculate the amount in controversy for the meal period claim. (ECF No. 8 at 15.) However, Defendant was not required to submit documentary evidence in addition to the Smith Declaration. *See De Vega v. Baxter Healthcare Corp.*, 507 F. Supp. 3d 1214, 1217 n.1 (N.D. Cal. 2019) (concluding "submission of copies of underlying documents [wa]s not critical" when the payroll manager's declarations setting out the employment data "la[id] an adequate foundation for the facts asserted").

8

1    Here, as in the foregoing cases, Plaintiff alleges Defendant engaged in a "pattern and
2 practice of wage abuse against their hourly-paid or non-exempt employees." (ECF No. 1-1 at 8.)
3 Plaintiff specifically alleges this "pattern and practice involved *inter alia*, failing to pay them for
4 regular and/or overtime wages earned and for missed meal periods and rest breaks in violation of
5 California law." (*Id.*) Because of Plaintiff's "pattern and practice" allegations, Defendant's use
6 of a 25% violation rate for Plaintiff's meal period claim is reasonable.

7    As the underlying data is sufficient and the use of a 25% violation rate is reasonable,
8 Defendant has satisfactorily shown the meal period claim alone establishes an amount in
9 controversy exceeding $5,000,000.00, or specifically, $5,301,096.64.

10                iii.    Rest Period Claim

11    The analysis of Plaintiff's rest period claim is similar to the meal period claim analysis.
12 Defendant again multiplies the number of putative class members (2,624) with the average hourly
13 pay rate ($20.51) and the estimated days worked during the relevant period (394). (ECF No. 12
14 at 15.) Once again, Defendant assumes a 25% violation rate and calculates $5,301,096.64 for this
15 claim. (*Id.* at 15.)

16    Plaintiff argues the violation rate used is too high as nothing in the Complaint suggests
17 Defendant failed to provide at least one rest period for every employee every week. (ECF No. 8
18 at 15.) In the opposition, Defendant argues the 25% violation rate can be reasonably assumed
19 because of the Complaint's "pattern and practice" allegations. (ECF No. 12 at 12.)

20    For the same reasons as above, the Court finds the 25% violation rate to be reasonable
21 based upon Plaintiff's allegation of Defendant engaging in a "pattern and practice" of failing to
22 pay employees for missed rest breaks in violation of California law. (*See* ECF No. 1-1 at 8.)

23    Because the underlying data is sufficient and the use of a 25% violation rate is reasonable,
24 Defendant has satisfactorily shown the rest period claim alone establishes an amount in
25 controversy of $5,301,096.64.

26    The amount in controversy totals $10,602,193.28 when solely considering Plaintiff's meal
27 period and rest period claims. Even if a smaller violation rate were to be used for these two
28 claims, such as 15% instead of 25%, the amount in controversy from these two claims would still

9

exceed the jurisdictional threshold.  Therefore, Defendant has shown the amount of controversy exceeds the CAFA jurisdictional threshold by a preponderance of the evidence.  As such, the Court does not examine the amount in controversy arising from the other claims alleged by Plaintiff.

Accordingly, the Court DENIES Plaintiff's motion to remand.

        B.      <u>Motion to Strike</u>

Defendant argues Plaintiff's eleven-page long reply on Plaintiff's motion to remand exceeds the page limit of ten pages.  (ECF No. 16 at 2.)  Defendant thus requests the Court strike any pages in excess of the page limit.  (*Id.*)

The eleventh page of Plaintiff's reply contains a portion of Plaintiff's arguments regarding federal question jurisdiction and how there is no basis for supplemental jurisdiction.  (ECF No. 15 at 15.)  The Court does not address Plaintiff's arguments regarding federal question jurisdiction and supplemental jurisdiction because the Court denies Plaintiff's motion to remand on a finding of diversity jurisdiction under CAFA.  Therefore, the Court did not need to consider any arguments on the eleventh page of Plaintiff's reply.  Accordingly, the Court DENIES Defendant's motion to strike as moot.

        **IV.**     **CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion to Remand (ECF No. 8) is DENIED and Defendant's Motion to Strike (ECF No. 16) is DENIED as moot.

**DATED: August 9, 2022**

        _____
        Troy L. Nunley
        United States District Judge